IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:21-cv-00079-RJC-DCK

| | |
|---|---|
| LAUREN SMITH,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF NORTH CAROLINA CHARLOTTE, ROBERT McEACHNIE, in his individual and official Capacities, and the UNIVERSITY OF NORTH CAROLINA SYSTEM, through its Governing body, the BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA,<br><br>Defendants. | **BRIEF IN SUPPORT OF THE UNIVERSITY OF NORTH CAROLINA AT CHARLOTTE AND THE UNIVERSITY OF NORTH CAROLINA SYSTEM'S MOTION TO DISMISS**<br><br>**Fed. R. Civ. P. 12(b)(1), 12(b)(2), & 12(b)(6)** |

## INTRODUCTION

While Lauren Smith was a 21-year-old student at the University of North Carolina at Charlotte, she engaged in a consensual, sexual relationship with a faculty member Dr. Robert McEachnie. This relationship started in the summer of 2017 and ended in November 2017. Ms. Smith reported this relationship to UNC Charlotte in 2019. At the conclusion of the investigation of Ms. Smith's report, UNC Charlotte disciplined Dr. McEachnie.

Ms. Smith has now sued UNC Charlotte, The University of North Carolina System, and Dr. McEachnie for allegedly violating title IX, violating section 1983, and for intentionally inflicting emotional distress. Under the doctrine of sovereign immunity, UNC Charlotte and UNC System ("State Defendants") have moved to dismiss Ms. Smith's section 1983 claim and intentional infliction of emotional distress claim. In addition, State Defendants have moved to dismiss Ms. Smith's title IX claim for failure to state a claim upon which relief can be granted.

As explained below, the Court should grant State Defendants' motion and dismiss Ms. Smith's complaint with prejudice.

**SUMMARY OF THE FACTS**[1]

In the spring semester of 2017, Ms. Smith took a class taught by Dr. McEachnie. Compl. ¶ 15, ECF 1.1. During the semester, she would go to Dr. McEachnie's office between classes where he would "hold court" and tell the assembled students about his academic accomplishments. Compl. ¶ 16. Ms. Smith occasionally went to Dr. McEachnie's office alone at his invitation, and also had dinner at his house with another student and Dr. McEachnie's family. Compl. ¶¶ 20, 22.

---

[1] For the motion to dismiss, the facts in Ms. Smith's complaint are treated as true.

2

Eventually, Dr. McEachnie encouraged Ms. Smith to apply to a study abroad program in Jerusalem during the summer of 2017. Compl. ¶ 27. She was accepted into the program.

During the study-abroad trip, Ms. Smith and Dr. McEachnie began a sexual relationship. Compl. ¶ 30. This relationship continued until November 2017 when Ms. Smith terminated the relationship. Compl. ¶ 37. Ms. Smith did not notify UNC Charlotte of this relationship until 2019. Compl. ¶ 39.

Another female student on the same study-abroad trip complained about Dr. McEachnie's conduct when she returned from the trip in July of 2017. Compl ¶ 25. This student complained about an unwanted sexual overture and inappropriate touching. Compl ¶ 24. Importantly, this complaint was made after Ms. Smith started her consensual, sexual relationship with Dr. McEachnie.

## LEGAL STANDARD FOR DISMISSAL

Ms. Smith's claims for a violation of section 1983 and intentional infliction of emotional distress are barred by sovereign immunity. Under federal law, when a defendant raises the issue of sovereign immunity, it may be addressed under either rule 12(b)(1) or rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Fleming v. Va. State Univ.*, No. 3:15cv268, 2016 WL

3

927186, at *1 n.4 (E.D. Va. Mar. 4, 2016).  Under North Carolina law, it is unsettled "whether sovereign immunity is grounded in a lack of subject matter jurisdiction or personal jurisdiction." *M Series Rebuild, LLC v. Town of Mount Pleasant, Inc.*, 222 N.C. App. 59, 62, 730 S.E.2d 254, 257 (2012).  As a result, State Defendants move to dismiss Ms. Smith's claims under rules 12(b)(1), (2), and (6).

Under rules 12(b)(1) and (6), the Court should grant State Defendants' motion to dismiss because the complaint fails to allege sufficient facts to establish that this Court has subject-matter jurisdiction.  *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

Under rule 12(b)(2), this Court should dismiss Ms. Smith's claims because she has failed to prove by a preponderance of the evidence that this Court has personal jurisdiction over State Defendants.  *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

State Defendants move to dismiss Ms. Smith's title IX claim under rule 12(b)(6).  This Court should dismiss her title IX claim because even if all factual inferences are drawn in her favor, Ms. Smith has not pleaded sufficient factual content to allow this Court to reasonably infer that State Defendants are liable for violating title IX.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4

## ARGUMENT

I. **The Doctrine of Sovereign Immunity Bars Ms. Smith's Section 1983 Claim.**

Ms. Smith's section 1983 claim against State Defendants fails because they are immune from suit as an arm of the State.

Generally, the State is immune from suit unless it has waived its immunity. *Virginia Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253-54 (2011); *see also* 33 Richard Murphy, Federal Practice and Procedure § 8351 (2d ed. 2020). In addition, Congress may abrogate a state's sovereign immunity with appropriate legislation. *Stewart*, 563 U.S. at 253-54. However, without a "waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 254.

With respect to section 1983 claims, the State has not waived its immunity, and "Congress did not intend to abrogate state sovereign immunity" when it passed section 1983. *Quinn v. N.C. Dep't of Health & Hum. Servs.*, No. 3:19-cv-00391-FDW-DCK, 2020 WL 369290, at *4 (W.D.N.C. Jan. 22, 2020) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-68 (1989)).

Here, State Defendants are agents of the State. The UNC System is created in section 116-3 of the general statutes "to foster the development of a well-planned and coordinated system of higher education." N.C. Gen. Stat. §

116-1. To achieve this goal, UNC System is made up of 17 educational institutions. N.C. Gen. Stat. § 116-4. UNC Charlotte is one of the 17 institutions listed in section 116-4. When considering this statutory structure, other courts have held that UNC System and its constituent institutions are an agency of the State. *See, e.g.*, *Bd. of Governors of Univ. of N.C. v. U.S. Dep't of Labor*, 917 F.2d 812, 816 (4th Cir. 1990); *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1139 n.6 (4th Cir. 1990); *Costello v. Univ. of N.C. at Greensboro*, 394 F. Supp. 2d 752, 756 (M.D.N.C. 2005); *Bartges v. Univ. of N.C. at Charlotte,* 908 F. Supp. 1312, 1332-33 (W.D.N.C. 1995). Thus, as an arm of the State, State Defendants are immune from a section 1983 lawsuit.

In fact, another district court recently held that Winston-Salem State University is immune from a section 1983 suit because it is an arm of the State. *Mitchell v. Winston-Salem State Univ.*, No. 1:19-CV-130, 2020 WL 1516537, at *6 (M.D.N.C. Mar. 30, 2020). This Court should reach the same result here and hold that the doctrine of sovereign immunity bars Ms. Smith's section 1983 claim against State Defendants.

In addition, even if the doctrine of sovereign immunity did not apply, Ms. Smith's section 1983 claim against State Defendants would still fail. This is because under section 1983 Ms. Smith "must aver that *a person* acting under color of state law deprived [her] of a constitutional right or a right

conferred by a law of the United States." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009) (emphasis added).

As explained above, State Defendants are an agency of the State. As an agent of the State, State Defendants are not considered a person within the meaning of section 1983. *Will*, 491 U.S. at 64 ("a State is not a person within the meaning of § 1983.") Thus, Ms. Smith cannot assert a section 1983 claim against State Defendants.

For these reasons, the Court should dismiss Ms. Smith's section 1983 claim against State Defendants with prejudice.

## II. The Doctrine of Sovereign Immunity Also Bars Ms. Smith's Intentional Infliction of Emotional Distress Claim.

Ms. Smith's claim for intentional infliction of emotional distress against State Defendants fails because of the doctrine of sovereign immunity.

Under the State Tort Claims Act, the State has agreed to a limited waiver of its sovereign immunity to allow citizens to bring negligence claims against the State and its agents like UNC System and UNC Charlotte. N.C. Gen. Stat. § 143-291(a). This waiver, however, does not extend to intentional torts. *Frazier v. Murray*, 135 N.C. App. 43, 48, 519 S.E.2d 525, 528 (1999).

Intentional infliction of emotional distress is an intentional tort. *Vincent v. N.C. Dep't of Transp.*, No. 1:20-CV-51, 2020 WL 5710710, at *12 (M.D.N.C. Sept. 24, 2020). Thus, the State's waiver of sovereign immunity

does not extend to Ms. Smith's claim for intentional infliction of emotional distress. As a result, Ms. Smith's claim is barred by the doctrine of sovereign immunity.

Even if the State's waiver of sovereign immunity extended to intentional torts, this Court would still lack jurisdiction over Ms. Smith's claim. This is because under the Tort Claims Act, any tort claim filed against the State must be filed in the Industrial Commission. *Wood v. N.C. State Univ.*, 147 N.C. App. 336, 343, 556 S.E.2d 38, 43 (2001). Thus, only the Industrial Commission—not this Court—has jurisdiction over tort claims filed against the State. *See Alt v. John Umstead Hosp.*, 125 N.C. App. 193, 198, 479 S.E.2d 800, 804 (1997) (noting that State superior courts do not have jurisdiction over negligence claims filed against the State).

For these reasons, the Court should dismiss Ms. Smith's claim for intentional infliction of emotional distress against State Defendants with prejudice.

## III. The Allegations in Ms. Smith's Complaint Do Not Support an Inference That UNC Charlotte Acted with Deliberate Indifference In Violation of Title IX.

Under title IX a student can sue an educational institution if that institution: (1) was "receiving federal funds," (2) the student was harassed[2] based on her sex, (3) "the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007). Generally, there are five different theories a plaintiff can rely on to prove the element of sexual harassment. These theories are:

1. That the institution "perpetuated and condoned a sexually-hostile environment";

2. That the institution "was deliberately indifferent to discrimination by individuals under its control";

3. That the institution "reached an erroneous outcome in disciplinary proceedings due to sex discrimination";

4. That the institution "selectively enforced its internal rules on the basis of sex[;] or"

5. That the institution "used 'archaic assumptions' to make athletic funding decisions."

---

[2] Sexual harassment occurs when there is unwelcome conduct. *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (noting that the first element of a sexual harassment claim is unwelcome conduct); *see also* 34 C.F.R. § 106.30(a). Here, there are no allegations of sexual harassment because the relationship between Ms. Smith and Dr. McEachnie was consensual.

9

*McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 599 (M.D.N.C. 2019). Regardless of which theory a plaintiff relies on, the harassment must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).

Here, Ms. Smith's claim appears to be based on a deliberate-indifference theory. Specifically, Ms. Smith's complaint asserts that UNC Charlotte failed to "properly," "adequately," or "promptly" address reports of alleged misconduct by Dr. McEachnie. Compl. ¶¶ 47, 48. In addition, she alleges that UNC Charlotte "acted with *deliberate indifference* to [Ms. Smith] and her co-students." Compl. ¶ 49 (emphasis added). Thus, a review of the paragraphs that support Ms. Smith's title IX claim, reveal that she is relying on a deliberate-indifference theory.

To state a claim based on deliberate indifference, Ms. Smith must allege that "a school official with authority to remedy the discrimination [had] actual notice or knowledge of the alleged discriminatory conduct and exhibit[ed] 'deliberate indifference to discrimination,'" *McClean*, 376 F. Supp. 3d at 599, which caused her "to undergo harassment *or make [her] liable or vulnerable to [harassment]*." *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1097 (10th Cir. 2019) (quoting *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644-45, (1999)).

Ms. Smith's deliberate-indifference claim fails for at least three reasons.

First, no school official with authority to remedy the discrimination had actual notice[3] of the alleged discrimination.[4] The complaint alleges that Ms. Smith and another student reported Dr. McEachnie to his department chair. Compl. ¶¶ 25, 39. Yet, there are no allegations that the department chair had the authority to hire or fire employees, which would mean that he is not a school official with the authority to remedy the discrimination. *See, e.g., Baynard v. Malone*, 268 F.3d 228, 238-39 (4th Cir. 2001). As a result, there are no allegations to support an inference that a UNC Charlotte official with authority to remedy the discrimination had notice of the alleged discrimination.

Second, even if a report to a department chair were sufficient notice, UNC Charlotte received this notice after Ms. Smith's relationship with Dr. McEachnie began. Ms. Smith alleges that her sexual relationship with Dr. McEachnie began in the summer of 2017 on a study-abroad trip in Israel.

---

[3]  *See* 34 C.F.R. § 106.30(a) (defining actual knowledge).

[4]  To the extent Plaintiff intends to attempt recovery against UNC System in addition to UNC Charlotte, her title IX claim must fail because there are absolutely no allegations in her complaint indicating that anyone at UNC System or UNC Board of Governors had any notice or information at any time prior to the filing of this lawsuit about Ms. Smith's allegations.

11

Compl. ¶¶ 27-30.  On the same trip, another student claimed that Dr. McEachnie touched her inappropriately.  Compl. ¶ 24.  That student reported the inappropriate touching to Dr. McEachnie's department chair in July 2017.  Compl. ¶ 25.  Thus, as alleged in Ms. Smith's own complaint, UNC Charlotte did not have notice of the alleged discriminatory conduct until *after* Ms. Smith started a relationship with Dr. McEachnie.

Finally, even if UNC Charlotte had actual notice and allegedly failed to timely respond to the alleged misconduct, that failure could not have caused Ms. Smith to undergo harassment.  This is because the alleged discriminatory conduct—Ms. Smith's relationship with Dr. McEachnie—began before the July 2017 complaint.[5]  In addition, the relationship ended four months after the July 2017 complaint, and there are no allegations that any action or inaction by UNC Charlotte during that four-month period made Ms. Smith vulnerable to harassment.  Thus, there is no way UNC Charlotte could have remedied the alleged discriminatory conduct before it commenced because UNC Charlotte had no notice of the alleged discriminatory conduct.

---

[5] To the extent Ms. Smith is relying on UNC Charlotte's response to her report of misconduct in 2019 to support her deliberate-indifference claim, that reliance is misplaced.  Ms. Smith admits that UNC Charlotte investigated her report and determined that a violation of UNC Charlotte Policy had occurred.  Compl. ¶¶ 39-43.

12

Ms. Smith has failed to allege sufficient facts in her complaint to show that UNC Charlotte or UNC System had actual knowledge of the alleged discriminatory conduct or that UNC Charlotte's actions caused her to undergo harassment. As a result, the Court should dismiss Ms. Smith's title IX claim with prejudice.

## CONCLUSION

For these reasons, Ms. Smith's entire complaint should be dismissed with prejudice.

This 1st day of March, 2021.

        JOSHUA H. STEIN
        Attorney General

        /s/ Kenzie M. Rakes
        Kenzie M. Rakes
        Assistant Attorney General
        NC State Bar No. 46349
        krakes@ncdoj.gov

        NC Department of Justice
        PO Box 629
        Raleigh, NC 27602
        Tel: 919-716-6920
        Fax: 919-716-6764

        *Attorney for Defendants the University of North Carolina at Charlotte and the University of North Carolina System*

## CERTIFICATE OF SERVICE

I certify that the foregoing **BRIEF IN SUPPORT OF THE UNIVERSITY OF NORTH CAROLINA AT CHARLOTTE AND THE UNIVERSITY OF NORTH CAROLINA SYSTEM'S MOTION TO DISMISS** was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification to all registered CM/ECF users.

    Julie H. Fosbinder
    FOSBINDER LAW OFFICE
    840 Seneca Place
    Charlotte, NC 28210

    *Counsel for Plaintiff*

    Marc E. Gustafson
    Bell, Davis & Pitt, P.A.
    227 West Trade Street, Suite 1800
    Charlotte, NC 28202

    *Counsel for Robert McEachnie*

This 1st day of March, 2021.

                                            /s/ Kenzie M. Rakes
                                            Kenzie M. Rakes
                                            Assistant Attorney General