IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:21-cv-00079-RJC-DCK

| | |
|---|---|
| LAUREN SMITH,<br><br>    Plaintiff,<br><br>vs.<br><br>THE UNIVERSITY OF NORTH CAROLINA CHARLOTTE, ROBERT MCEACHNIE, in his individual and official Capacities, AND THE U NIVERSITY OF NORTH CAROLINA SYSTEM, through its Governing body, the BOARD OF GOVERNORS OF THE UNIVERSITY OF NORTH CAROLINA,<br><br>    Defendants. | FIRST AMENDED COMPLAINT<br>(Jury Trial Requested) |

## I. INTRODUCTION

### COMPLAINT

The Plaintiff, Lauren Smith, complaining of the Defendants, hereby alleges and says the following:

### I.
### NATURE OF THE ACTION

1. This civil action has been commenced by the Plaintiff to rectify, and otherwise remedy violations of 20 U.S.C. 1681(a) as more fully set forth herein.

2. This is also an action brought under the North Carolina Constitution.

3. This is also an action brought under North Carolina common law, for intentional infliction of emotional distress.

4. Plaintiff seeks compensatory damages, pecuniary damages, injunctive relief, and such other relief to which she is entitled as a consequence of the acts taken against her by Defendants.

## II.
## PARTIES & JURISDICTIONAL STATEMENT

5. Plaintiff Lauren Smith is a female citizen and resident of Gaston County, North Carolina. At most times relevant herein, Ms. Laws was a student at the University of North Carolina Charlotte (hereafter UNCC).

6. The Defendant The University of North Carolina Charlotte, is a constituent institution of the Defendant The University of North Carolina System. The Defendant UNCC is located in and operates in Mecklenburg County, North Carolina.

7. Defendant The University of North Carolina System is governed by the Board of Governors of the University of North Carolina, as established by Chapter 116 of the North Carolina General Statutes.

8. The Board of Governors of The University of North Carolina System is a body politic that is able and capable in law to be sued and sue in the courts, to acquire and sell real estate and perform related functions, and in general to do all things that can be legally done by a body corporate and/or politic.

9. Collectively the Defendant university entities are referred to as the University Defendants.

10. Defendant Robert McEachnie was and is, upon information and belief, employed by the Defendant Universities and works as a professor at UNCC.

11. This Court has jurisdiction over the parties and subject matter of this Complaint. Venue is proper in Mecklenburg County.

# III.
# STATEMENT OF FACTS

12. Ms. Smith is now 24 years old. Ms. Smith was 21 when the incidents in question began.

13. Ms. Smith grew up in Gaston County, North Carolina, and received her high school diploma from Gastonia's Forestview High School in 2013. Ms. Smith earned a degree from UNCC in Religious Studies and graduated in 2018.

14. Ms. Smith is a very hard-working person. She is employed full time, and has pursued additional degrees at UNCC, including a Bachelor of Arts in History and a teaching certificate. She anticipates completing her history degree and obtaining her teaching certificate in or about 2022.

15. Ms. Smith enrolled in a UNCC Ancient Christianities class for spring semester, 2017. It is there that she met Defendant Robert McEachnie. Upon information and belief, Defendant McEachnie has been employed by UNCC for approximately eleven years.

16. Within a few weeks of the commencement of the class, in the spring of 2017, Ms. Smith was encouraged by fellow students to participate in gatherings Mr. McEachnie hosted in his office between classes. Mr. McEachnie held court in these office gatherings, which sometime lasted for hours. He told the assembled group of his academic accomplishments, including a book which he had written and said was being released at that time. Mr. McEachnie as charming and engaging in these early meetings. The students were attracted to his energy and enthusiasm.

17. In the office gatherings, Defendant Robert McEachnie encouraged the students to

disclose very personal and private details of their lives, in part by sharing details of his own illness with them.

18. At one office session, when other students were present, Mr. McEachnie questioned Ms. Smith about a doctor's appointment, and later gleaned information from her about her medical conditions.

19. From the time he met her, Mr. McEachnie groomed Ms. Smith for a sexual relationship with him. Mr. McEachnie encouraged Ms. Smith to speak frankly with him about her thoughts and ideas and her personal life. She shared with him intimate details of her life. Mr. McEachnie complimented her, while at the same time bragging about his academic accomplishments so that she would hold him in high regard. He told her to go to graduate school, and that he would help her apply and write a letter of recommendation for her.

20. In or about late April 2017, Mr. McEachnie began to invite Ms. Smith to come to his office alone. In these closed door sessions in Mr. McEachnie's office he confided in Ms. Smith additional details of his personal life, his marital situation and his sexual habits and propensities.

21. Ms. Smith and Mr. McEachnie began to communicate through social media using false usernames created by Mr. McEachnie, and twitter and text messages with false identifiers.

22. Beginning a few weeks after the commencement of the office meetings, Mr. McEachnie invited Ms. Smith and another female student to his home for dinners at which his wife and children were present.

23. Mr. McEachnie pursued Ms. Smith, inviting her to come to his house when his family

was out of town. He called Ms. Smith late at night, and told her everything would work itself out, and they would be together.

24. Upon information and belief, another student of Mr. McEachnie, AW, was subjected to sexual overtures and inappropriate touching by Mr. McEachnie while on the Israel study abroad trip in the summer of 2017. Ms. AW was in a very vulnerable position, having serious medical conditions. Ms. AW states that she rejected Mr. McEachnie's overtures and that his response was to threaten her ability to get into graduate school if she told anyone.

25. This information regarding AW became known to Ms. Smith only after Ms. Smith ended the relationship with Mr. McEachnie.

26. AW reported Mr. McEachnie's sexual overtures and actions to the University by reporting him to his Department Chair in early July 2017. She also reported her belief that Mr. McEachnie was involved in a relationship with a student during the Mt. Zion trip, stating she had observed them spend considerable time together, and that there were sexual texts from Mr. McEachnie to Ms. Smith on Ms. Smith's phone.

27. The UNCC investigative report created in response to Ms. Smith's 2019complaint reveals that AW's allegations were not even given a cursory investigation in 2017, and would apparently have been permanently hidden had Ms. Smith not come forward with her own complaint in July, 2019.

28. The Department Chair to whom AW complained in July 2017 stated that he failed to take action in response to the AW's complaint because he had misunderstood his obligations under the applicable University policy.

29. However, communications between AW and the Department Chair show that the Chair

emailed AW multiple times, promised AW an investigation, asked her for the identity of witnesses, and asked her for the identity of the student who was having a relationship with Mr. McEachnie. The Department Chair promised to approach the student witnesses, and then promised to meet with AW, yet failed to follow up with AW, and upon information and belief, failed to follow up with any witnesses.

30. Instead of an investigation of AW's complaint, upon information and belief, the Chair asked only Mr. McEachnie if he had a sexual relationship with a student. Mr. McEachnie denied it at that time, and the Chair closed the book on the investigation-- which was opened two years later when Ms. Smith came forward.

31. Ms. Smith applied to the UNCC sponsored Mt. Zion summer study abroad program, held in Jerusalem in the summer of 2017. Mr. McEachnie encouraged Ms. Smith to participate in this program, a program for which he was responsible along with another UNCC professor. Mr. McEachnie graded student participation on the program. The students on the Mt. Zion trip were essentially in the custody of UNCC, with Mr. McEachnie one of the two professors leading the trip.

32. Under North Carolina criminal law, N.C.G.S. 14-27.31, it is unlawful for a person having custody of another to have a sexual relationship with the person for whom they are caring, and consent to the activity is not a defense.

33. As a part of her application for the study abroad program, Ms. Smith completed a medical form which disclosed her medical and psychological conditions, and medications. Mr. McEachnie had access to and read this medical form. Before the trip to Israel commenced, Mr. McEachnie was aware that Ms. Smith suffered from serious psychological conditions and was actively undergoing treatment for those

6

conditions. Once in Israel Ms. Smith stopped taking what at the time was her primary medication for these conditions. Mr. McEachnie was also aware that she had stopped taking this medication, and able to observe the serious side effects which abruptly stopping this medication caused.

34. At the time of the trip to Israel, Ms. Smith's medical conditions and medication regime impaired her ability make decisions and to assess risk. Due to this, Ms. Smith was not capable of making informed, logical decisions. As such she acted rashly to her detriment. She was not capable of fully consenting to the relationship with Mr. McEachnie. Mr. McEachnie was or should have been aware of Ms. Smith's inability to fully consent, given that he was aware of her conditions, changes in medications, and behavior.

35. In Israel, Mr. McEachnie's attentions toward Ms. Smith increased significantly. He communicated with her by text, twitter and Whatsapp. These private communications took place on a daily basis, many times multiple times per day. As a matter of the nature of the study program Ms. Smith also worked with Mr. McEachnie on a daily basis, under the rugged conditions and high temperatures the dig required. Mr. McEachnie and Ms. Smith used false names on each of their social media platforms.

36. After arriving in Israel, Mr. McEachnie began a sexual relationship with Ms. Smith. Mr. McEachnie manipulated Ms. Smith, and took advantage of the respect and trust she had in him as a professor.

37. Mr. McEachnie abused his position as a teacher in order to have a sexual relationship with Ms. Smith. Mr. McEachnie made false promises to Ms. Smith of both a very personal and a professional nature, took advantage of her serious medical conditions,

and exhorted great control over her.

38. Mr. McEachnie dictated virtually every aspect of his interactions with Ms. Smith during the Mt. Zion trip and expected Ms. Smith to acquiesce to his decisions.

39. Mr. McEachnie's actions toward Ms. Smith constituted sexual harassment, creating a hostile environment for her.

40. Upon information and belief, a UNCC school official with the authority to remedy the discrimination had actual notice or knowledge of the alleged discriminatory conduct and failed to act to stop the discriminatory conduct.

41. Upon information and belief, the UNCC leader of the trip, and/or staff members on the trip, had knowledge of Mr. McEachnie's sexual behavior with the plaintiff and with at least one other female student on the trip.

42. The UNCC group on the 2017 Mt. Zion trip was small, with only approximately 18 students in attendance, along with a handful of staff.. The students and staff socialized in the evenings, going to dinner and drinking together.

43. Numerous students noted that there was a lot of "drama" on the trip, in part caused by the response of students to the talk that Mr. McEachnie was having a sexual relationship with the Plaintiff. Students confronted each other about whether they believed there was a sexual relationship, with some "defending" Mr. McEachnie by saying he would not do such a thing, others saying that in fact he was having sex with a student. After text messages between Ms. Smith and Mr. McEachnie were discovered by students, it was widely known that Mr. McEachnie was engaged in a sexual relationship.

44. According to one student, there were 18 students on the 2017 Mt. Zion trip, and "we all knew" of the relationship between Mr. McEachnie and Ms. Smith.

45. A student on the 2017 Mt. Zion trip observed that the other UNCC professor leading the trip flirted with female students. At times, after he had too much to drink, he would approach female students, touch their hands, and make comments about their looks. Due to his behavior as well as the rumor that his second wife was a much younger student, upon information and belief participants were deterred from reporting Mr. McEachnie's misconduct to this other UNCC professor.

46. Moreover, according to one student on the 2017 trip, a group of the female students openly referred to themselves as "Robert's hoes", Robert referring to Mr. McEachnie, and "hoes" a slang term for whores.

47. This failure to respond to the actions of Mr. McEachnie by UNCC staff on the trip was deliberate indifference to gender discrimination, which caused Plaintiff Smith to undergo additional harassment. In addition, UNCCs failure to investigate the AW complaint in 2017 caused Plaintiff Smith to undergo additional harassment.

48. Moreover, due to UNCCs failure to investigate the AW complaint in 2017, Mr. McEachnie was a participant in both the 2018 and 2019 Mt. Zion trip, again in a role overseeing students.

49. Upon information and belief, Mr. McEachnie sexually harassed female students on both the 2018 and 2019 Mt. Zion trips.

50. On both occasions, students report inappropriate sexual conduct was engaged in. Mr. McEachnie is alleged to have made sexual overtures to female students on the 2018 trip or 2019 trip.

51. In 2017, after the official Mt. Zion summer study program ended, Mr. McEachnie urged Ms. Smith and another female student to extend their stay overseas. Ms. Smith

9

assented. She left to meet Mr. McEachnie in Turkey, where they stayed for a short time.

52. The two then travelled to London together where the relationship continued.

53. During this time, Mr. McEachnie became even more open with Ms. Smith, disclosing student grades and detailed assessments of student academic work. Mr. McEachnie violated the FERPA by these discussions and disclosures.

54. Mr. McEachnie also interfered with Ms. Smith's education after their return from the Israel and London trip.

55. In the fall of 2017, Mr. McEachnie told Ms. Smith to drop two classes she had signed up for. He indicated that in order for them to continue their relationship she would have to drop the two classes, and she did.

56. From the beginning of their interactions, Mr. McEachnie manipulated Ms. Smith in many ways. He made numerous false statements to her about his intentions, and took advantage of her serious psychological conditions which made her unusually vulnerable to his actions. He showed other student's papers, implying that he could do the same with her private information.

57. Ms. Smith was severely damaged by Mr.McEachnie, and sought additional psychological help after her return to the United States in the fall of 2017. Eventually, Ms. Smith terminated the relationship with Mr. McEachnie in or about November 2017.

58. Ending the relationship did not terminate the pain caused by it and the psychological harm. That psychological harm continues to be a factor in Ms. Smith's life.

59. In 2019, Ms. Smith reported Mr. McEachnie's misconduct and some details of their relationship to the Department Chair.

60. An investigation of Ms. Smith's complaint to the Department chair was performed.

61. Although Mr. McEachnie acknowledged lying about material facts to his students on the Israel trip, misrepresenting his relationship with Ms. Smith, and engaging in a sexual relationship with a subordinate and vulnerable student while overseas, his employment was not terminated. The final report of the investigation fails to fully address certain critical allegations, including AW's allegations of unwanted physical touching by Mr. McEachnie.

62. The investigation did not reach out to important witnesses, in particular, a staff member who witnessed Mr. McEachnie's 2018 and 2019 sexual overtures and heard inappropriate remarks, and to the UNCC faculty leader of the 2017 trip.

63. Moreover, the response to the complaint was not reasonably calculated to end the harassment in that. Professor McEachnie was allowed to continue teaching on the UNCC campus. To Plaintiff's knowledge his misconduct was not publicized nor made known to future students or their families who would have benefitted by such knowledge.

64. The final report of the investigation fails to provide for adequate corrective and remedial actions to address Mr. McEachnie's misconduct.

65. Mr. McEachnie violated UP 101. 3 entitled "Relationships between Students and Faculty Members or other University Employees" by having an "amorous relationship" with a student who he was teaching and supervising in the Ancient Christianities class, and during the summer study program.

## IV. LEGAL CLAIMS

### FIRST CAUSE OF ACTION

### (Violation of Title IX, 20 U.S.C. 1681(a))

66. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs as if set forth herein.

67. At all material times, upon information and belief, the Defendant Universities were receiving federal funding as contemplated by Title IX, 20 U.S.C. 1681, et.seq.

68. At all material times, Plaintiff Smith was a student at Defendant Universities.

69. The sex based harassment and conduct alleged in the foregoing paragraphs was so server, pervasive and objectively offensive that it deprived Plaintiff of her access to educational opportunities or benefits provided by the University Defendants. The sex based harassment constituted both hostile environment and quid pro quo harassment.

70. The Defendants deprived Plaintiff of educational benefits and created a hostile work environment in violation of Title IX. because Plaintiff was a member of a protected class as a female, she was subjected to sexual harassment and sexual misconduct, that harassment and misconduct took place because of her gender, female, she was unable to consent to the acts and therefore it was unwelcome, and she was further subjected to a hostile environment by the Defendants' failure to properly and adequately address the actions complained of.

71. The Defendants' failures to properly and adequately and promptly address the conduct of the Defendant McEachnie resulted in Plaintiff, because of her gender, being excluded from participation in, being denied the benefits of and being subjected to discrimination in the Defendants' education programs.

72. The benefits denied but are not limited to Plaintiff's exclusion from two fall 2017-2018 classes which Ms. Smith had chosen to take, but Mr. McEachnie persuaded her not to take.

73. Defendants Universities failed to take immediate, appropriate and effective remedial steps to resolve the complaints of A.W., Plaintiff's fellow student, and of Plaintiff, and instead acted with deliberate indifference to plaintiff and her co-students. Defendants engaged in a pattern and practice of failing to address adequately the sexual harassment and sexual misconduct allegations of students. This policy had a disparate impact on female students and resulted in disparate treatment of female students.

74. Defendants failed to properly address Mr. McEachnie's sexual harassment of Ms. Smith and violation of University policies in 2017, even though they had multiple opportunities to do so. Had Defendants intervened with Mr. McEachnie while he was on the Mt. Zion trip, or responded appropriately and conducted an investigation in July, 2017 when A.W. complained to the Department Chair, Ms. Smith would have been spared several months of sexual harassment.

75. UNCC perpetuated and condoned a sexually hostile environment by failing to investigate AW's complaint in 2017, failing to respond to the open misconduct of Mr. McEachnie in 2017, and immediate, appropriate and effective remedial action after its 2019 investigation of Ms. Smith's complaint.

76. Plaintiff has suffered emotional distress and damage, and has lost tuition dollars as a result of the Defendants' conduct, including their deliberate indifference to her rights under Title IX.

## SECOND CAUSE OF ACTION

( Violation of North Carolina Constitution)

77. Plaintiff re-alleges and incorporates by reference the allegations contained in the Preceding Paragraphs of this Amended Complaint.

78. Under the North Carolina Constitution, Art. I, Sec. 15, "the people have a right to the privilege of education and it is the Duty of the State to guard and maintain that right.". Under the North Carolina Constitution, Art. I, Sec. 19, Plaintiff is due equal rights under the law, including the right to personal security and integrity.

79. The University Defendants had or have unconstitutional practices, customs or policies of failing to adequately investigate and respond to complaints of sexual misconduct by professors, and failing to adequately train personnel with respect to reporting and investigating complaints of sexual misconduct by professors. This has had a disparate impact on female students and resulted in disparate treatment of female students.

80. As a direct and proximate result of the discriminatory acts of the Defendant, Plaintiff has sustained damages in the form of emotional distress, including, but not limited to humiliation, sleeplessness, anxiety and depression. Accordingly, Plaintiff is entitled to compensatory damages in amounts to be proven at trial.

## THIRD CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

81. Plaintiff re-alleges and incorporates by reference the allegations contained in the Preceding Paragraphs of this Amended Complaint.

82. Plaintiff was subjected to conduct which was both extreme and outrageous by Defendant McEachnie and the University Defendants.

83. The extreme conduct included acts which were intolerable in a civilized society. The acts were atrocious and went beyond the bounds of decency. North Carolina courts have repeatedly concluded that a pattern of sexually inappropriate workplace behavior may constitute extreme and outrageous conduct. Such conduct occurred here.

84. As a direct and proximate result of the extreme and outrageous acts of the Defendant, Plaintiff has sustained severe emotional distress, including, anxiety and depression. As a direct and proximate result of the extreme and outrageous acts of the Defendant, Plaintiff has sustained damages in the form of emotional distress, including, but not limited to humiliation, sleeplessness, anxiety and depression. Accordingly, Plaintiff is entitled to compensatory damages in amounts to be proven at trial.

85. The actions of Defendant McEachnie were taken with the intent to cause, or reckless disregard for the causing of severe emotional distress upon Plaintiff. Plaintiff is entitled to receive punitive damages for these actions.

## V.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to enter an Order:

(A) Permanently enjoining Defendants from engaging in discriminatory practices;

(B) Awarding Plaintiff monetary damages in the form of tuition, in amounts to be proved at trial;

(C) Awarding Plaintiff compensatory damages for emotional distress, anxiety, depression and humiliation;

(D) Awarding Plaintiff her reasonable attorneys' fees and costs incurred in connection with this action;

(E) Granting Plaintiff such further and different relief as the Court deems necessary and proper under the circumstances of this case.

## IV.
## JURY TRIAL DEMANDED

Plaintiff demands a jury trial regarding the matters alleged herein.

This the March 22, 2021.

                                                <u>/s/ Julie H. Fosbinder</u>
                                                Julie H. Fosbinder
                                                Attorney for Plaintiff
                                                N.C. State Bar No. 19400
                                                FOSBINDER LAW OFFICE
                                                840 Seneca Place
                                                Charlotte, North Carolina 28210
                                                Telephone: (704) 560-8600
                                                Email: jhanfos2@gmail.com